Dear Mr. Napper:
On behalf of the Treasurer, you requested the opinion of this office concerning the allocation of monies to the Millennium Trust created in the Louisiana State Treasury as Article VII, Section 10.8 and the accompanying legislation contained in R.S. 39:98.1, et seq.
As a consequence of the Master Settlement Agreement (the "Settlement Agreement"), executed November 23, 1998, and approved by Consent Decree and Final Judgment entered in the case "Richard P. Ieyoub, Attorney General, ex rel. State of Louisiana v. Philip Morris, Incorporated, et al.", bearing Number 98-6473 on the docket of the Fourteenth Judicial District for the Parish of Calcasieu, State of Louisiana (the "Tobacco Settlement"), the Louisiana Legislature by Act No. 1392 of the 1999 Regular Session, approved by the electorate on October 23, 1999, enacted the constitutional amendment establishing the Millennium Trust (the "Trust"). Act No. 1295 of the same Session enacted enabling legislation with respect to the establishment of the Millennium Trust, R.S. 39:98.1, et seq. Both the constitutional amendment and the enabling legislation apply to the Tobacco Settlement revenues to be received by the State of Louisiana on and after the effective date of July 1, 2000.
The constitutional provision, as well as the enabling legislation, provides for the deposit and credit by the State Treasurer of certain portions of the Tobacco Settlement proceeds received by the State, after the effective date thereof, to the Trust. Article VII, Section 10.08 of the Constitution also establishes the creation of three special funds, the Health Excellence Fund, the Educational Excellence Fund and the TOPS Fund, within the Millennium Trust, and provides for the allocation and credit of the Tobacco Settlement Revenues received by the Trust, and the earnings of the Trust, to these special funds by the State Treasurer.
The first payment to the State of Louisiana of the Tobacco Settlement Proceeds after the effective date of the Trust occurred December 29, 2000, and will continue indefinitely thereafter pursuant to the terms of the Master Settlement Agreement. The amount of the December 29, 2000 payment was $49,365,152.43.
The issue presented relates to the allocation and credit of the amounts of the Tobacco Settlement proceeds deposited to the Trust, and also to the allocation and credit of the investment earnings of the Trust, among the three special funds within the Trust, during the first three years. Your questions are:
 What are the proper allocations and credits, and how are they to be calculated, of the total amount of monies annually deposited into the Millennium Trust, for the first three fiscal years after the effective date of the constitutional amendment, to be made by the State Treasurer to the three special funds established within the Trust, and likewise as to the allocations and credits of the Trust annual investment earnings to these funds, under and in accordance with Subsections 10.8(A)(1), (2), (3) and (4)?
 These provisions present the issue of whether the calculations of the allocations and credits of the total monies deposited to the Millennium Trust, for each of the first three fiscal years, to the special funds are to be based upon the one-third to each directives of Subsections (2), (3) and (4) only, and likewise as to the calculations of the allocations and credits of investment earnings to the funds?
 Or, must the allocation and credit provision of Sub-part (d) be considered in the calculations of the allocations and credits of the Settlement proceeds to each of the three special funds within the Trust by the State Treasurer during the first three fiscal years after the effective date of the constitutional amendment, such that these calculations of allocations and credits are something different than one-third to each special fund, and similarly with respect to the calculations of the allocations and credits of investment earnings to each of the funds? If so, what specifically are the calculations of these allocations and credits to be made by the State Treasurer, both as to the annual proceeds to be deposited and as to the investment earnings thereon, for each of the first three fiscal years? For example, is the ten percent allocation and credit to the Educational Excellence Fund, provided in Sub-part (d), to be calculated upon the entire amount of Settlement revenues deposited to Millennium Trust in each of the first three years, or upon one-third of the total amounts, or in some other way?
 If the Education Excellence Fund has more of the total Settlement Proceeds deposited to it during the first three years, and therefore has a larger percentage of the principal of the Millennium Trust in it than the other two special funds, should the calculations of allocations and credits of investment earnings of the entire Trust be on an equal one-third basis to each fund or on some other basis?
Article VII, Section 10.8 provides in pertinent part as follows:
 (A)(1) There shall be established in the state treasury as a special permanent trust the "Millennium Trust". After allocation of money to the Bond Security and Redemption Fund as provided in Article VII, Section 9(B) of this constitution, the treasurer shall deposit in and credit to the Millennium Trust certain monies received as a result of the Master Settlement Agreement . . . and all dividend and interest income and all realized capital gains on investment of the monies in the Millennium Trust. The treasurer shall deposit in and credit to the Millennium Trust the following amounts of monies received as a result of the Settlement Agreement:
 (a) Fiscal Year 2000-2001, forty-five percent of the total monies received that year.
 (b) Fiscal Year 2001-2002, sixty percent of the total monies received that year.
 (c) Fiscal Year 2002-2003 and each fiscal year thereafter, seventy-five percent of the total monies received that year.
 (d) For Fiscal Year 2000-2001, Fiscal Year 2001-2002, and Fiscal Year 2002-2003, ten percent of the total monies received in each of those years for credit to the Education Excellence Fund . . .
 (2) The Health Excellence Fund shall be established as a special fund within the Millennium Trust. The treasurer shall credit to the Health Excellence Fund one-third of the Settlement Agreement proceeds deposited each year into the Millennium Trust, and one-third of all investment earnings on the investment of the Millennium Trust . . .
 (3) The Education Excellence Fund shall be established as a special fund within the Millennium Trust. The treasurer shall credit to the Education Excellence Fund one-third of the Settlement Agreement proceeds deposited each year into the Millennium Trust, and one-third of all investment earnings on the investment of the Millennium Trust . . .
 (4) The TOPS Fund shall be established as a special fund within the Millennium Trust. The treasurer shall deposit in and credit to the TOPS Fund one-third of the Settlement Agreement proceeds deposited into the Millennium Trust, and one-third of all investment earnings on the investment of the Millennium Trust . . . (Emphasis added).
Initially, we note the following rules of constitutional and statutory construction to be pertinent to the issues before us:
Constitutional provisions are to be construed and interpreted by the same rules as are other laws. P G Retailers, Inc. v. Wright,590 So.2d 1272 (La.App. 1st Cir. 1991), rehearing denied; City ofNew Orleans v. Scramuzza, 507 So.2d 215 (La. 1987); andFirefighters' Retirement System v. Landrieu, 572 So.2d 1175
(La.App. 1st Cir. 1990), writ denied. Every constitutional and statutory provision must be interpreted in light of the purpose of the provision and the public policy interest it furthers. Breaux v. Hoffpauir, 674 So.2d 234
(La. 1996), rehearing denied; Radiofone, Inc. v. City of New Orleans,630 So.2d 694 (La. 1994); and State v. Farris,667 So.2d 337 (La.App. 1st Cir. 1995).
In construing constitutional provisions or amendments, one should ascertain and give effect to the intent of both framers of the amendment and of the people who adopted it and should therefore consider the objects sought to be accomplished by the adoption of the provision. Boardof Commissioners of Orleans Levee District v. Department of NaturalResources, 496 So.2d 281 (La. 1986).
All legislation enacted by the legislature is considered constitutional until declared otherwise in proceedings brought contradictorily between interested persons. Thus, constitutional and legislative enactments are presumed to be valid and to have meaning. American Waste and PollutionControl Company v. St. Martin Parish Police Jury, 627 So.2d 158 (La. 1993), rehearing denied.
General rules of statutory interpretation include the following provisions of our Civil Code and Revised Statutes:
 C.C. art. 9: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
 C.C. art. 10: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."
 C.C. art. 11: "The words of a law must be given their generally prevailing meaning . . ."
 C.C. art. 12: "When the words of a law are ambiguous, their meaning must be sought be examining the context in which they occur and the text of the law as a whole."
 C.C. art. 13: "Laws on the same subject matter must be interpreted in reference to each other."
 La. R.S. 1:3: "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning . . ."
 La. R.S. 1:4: "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."
Subsubparagraphs(A)(1)(a), (b), (c) and (d) describe how the Treasurer is to deposit in and credit to the Trust "the total monies received" as a result of the Settlement Agreement; while Subparagraphs (A)(2), (3) and (4) describe how the Treasurer is to credit the Settlement Proceeds deposited into the Trust. Two different amounts are described because the total monies received as a result of the Settlement Agreement per year will be a larger sum than the amounts which are to be deposited into the Trust and credited to the three subfunds, inasmuch as the balance of the amounts received which are not deposited into the Trust are to be deposited into the Louisiana Fund. Article VII, Section 10.9.
For Fiscal Year 2000-2001, the Treasurer is directed to deposit into the Trust forty-five percent (45%) of the total monies received as a result of the Settlement Agreement. Subsubparagraph (A)(1)(a). This forty-five percent (45%) is to be divided equally between the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund. Subparagraphs (A)(2), (3) and (4). In order to give effect to the language of Subsubparagraph (A)(1)(d), the Treasurer must also deposit ten percent (10%) of the total monies received as a result of the Settlement Agreement into the Education Excellence Fund. Subsubparagraph (A)(1)(d). The balance of the amount received as a result of the Settlement Agreement (45%) is to be deposited into the Louisiana Fund.
Accordingly, the December 29th payment in the amount of $49,365,152.43, should be credited as follows[1]: Forty-five percent (45%) or $22,214,318.59 to the Trust to be deposited one-third or $7,404,772.86 to each of the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund. An additional ten percent (10%) or $4,936,515.24 deposit should be made to the Education Excellence Fund. The remainder of forty-five percent (45%) or $22,214,318.59 should be deposited into the Louisiana Fund.
For Fiscal Year 2001-2002, the Treasurer should deposit into the Trust sixty percent (60%) of the monies received as a result of the Settlement Agreement, to be divided equally between the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund. Ten percent (10%) of the monies received as a result of the Settlement Agreement is to be deposited into the Education Excellence Fund. The balance or thirty percent (30%) is to be deposited into the Louisiana Fund.
For Fiscal Year 2002-2003, seventy-five percent (75%) of the monies received as a result of the Settlement Agreement is to be deposited into the Trust, to be divided equally between the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund. Ten percent (10%) of the monies received as a result of the Settlement Agreement is to be deposited into the Education Excellence Fund. The balance or fifteen percent (15%) is to be deposited into the Louisiana Fund.
For Fiscal Year 2003-2004 and thereafter, seventy-five percent (75%) of the monies received as a result of the Settlement Agreement is to be deposited into the Trust, to be divided equally between the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund, and the balance, without any additional deposit to the Education Excellence Fund, of twenty-five percent (25%) is to deposited to the Louisiana Fund.
The percentages set forth in the foregoing paragraphs for deposit to the Louisiana Fund can be decreased by a specific legislative instrument approved by a two-thirds vote of each house of the legislature. Subsubparagraph (A)(5).
As to the allocation of interest and investment earnings, Subsubparagraphs (A)(2), (3) and (4) each provides the Treasurer is to deposit into each fund "one-third of all investment earnings on the investment of the Millennium Trust" and therefore the allocation of investment earnings should be on an equal one-third amount to each of the Health Excellence Fund, the Education Excellence Fund and the TOPS Fund.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
[1] The Treasurer's calculations may be slightly different based upon rounding of numbers.